Good morning, Your Honors. My name is Tony Gallagher. I represent the appellant Ruben Martinez. My co-counsel, Jason Holden, represents Morales-Pena. There are two issues for Mr. Martinez which I would like to discuss. And how do you want to arrange the argument here? Your Honor, I'm going to try to do about five or six minutes and then give Mr. Holden about three minutes and then try to come back for one minute. Well, the time's a little tight and we want to make sure you get a chance to say what you need to say. Thank you very much, Your Honor. The two issues are intertwined, the sufficiency issue for Mr. Martinez as well as the Doyle violation issue. And I say that because the statement that Agent Stavrou made in response to my questions, and I think that it's important to put that in context, my question was, the Social Security numbers don't belong to him, but you haven't done any investigation with regard to his background at all. Is that what you're saying? You don't know where he was born? The response, because Mr. Martinez refused to speak to me after I explained to him his Miranda rights, I have no way of inquiring as to his family or his background. So he didn't just say no. That's correct, Your Honor. And that was actually when Judge Malloy asked me in Chambers, what kind of answer did you expect? I said, yes or no. And the concept of invited error, which was raised by the government, is not here. It just didn't happen. This is a Doyle error. It's a clear Doyle error. When Judge Malloy refused to grant the mistrial, I believe that he abused his discretion. He gave you pretty substantial relief, though. I can't remember a time when I've seen the entire testimony and the exhibits stricken. And neither have I, frankly, Your Honor. I've been practicing about 30 years, and I haven't seen that happen. But that's a two-edged sword. And I say it's a two-edged sword because the remedy that the district court used was so great that it drew even greater attention to Stavlow's statement. Do you really want us to reverse and remand for a new trial so the agent can get back up on the stand and introduce all those exhibits that you succeeded in excluding from the trial the first time around? No, Your Honors. I want you to grant my insufficiency argument and find it not guilty. And, frankly, if you recall the status of the evidence at the time that Stavlow made that statement, we're pretty much at the end of the case. The government, in our view, had not proven a conspiracy. Certainly there had been two drug deals on June 21st, and Mr. Martinez had arrived in Boulder to sell another nion to a pound of methamphetamine. But those were the substantive counts. There was no conspiracy proven at that point. What do we do with the telephone calls where he's talking about my partner and, you know, I've got to confer with him? That's pretty strong evidence. Yeah, and while you're at it, what about the non-co-conspirator who seems to be present without objecting? Well, let me address Judge Tallman's question first. As pointed out in cross-examination, my partner, they, we are all a ruse to continue the negotiations with Grimo on the phone on the 24th. Mr. Gallagher, we have to view this evidence in a light most favorable to the government. I have to assume that that was not the inference that the jury made from that evidence. Well, you have to assume that, Your Honor, but where's the agreement and with whom? The people who showed up at the drug deals with him? Well, they were speaking person in the case. What we have is a group of people who may have been together. We don't have any proof that they were acting in concert. What do we do with the fact that, and this is a question I have, obviously, for Mr. Holden, with the fact that Mr. Morales-Pena nods when the undercover agent says, you know, did you bring the pound of dope? Well, I'm sure that Mr. Holden is going to put this in better context than I, but as I recall, Mr. Morales-Pena is away from where Agent Grimo is talking to Mark Pena. I read the transcript, and the testimony says that the agent observed Morales-Pena nodding. That's what the transcript says. But we also know that no one verified whether he spoke English or not. He spoke Spanish. To the best of our knowledge, he has never spoken English. Then we're back to the phone call problem. Then the phone call. Who knows what he was saying? There's no translation of those conversations, and there's no voice identification to say that was Morales-Pena on the phone. Why couldn't the jury conclude that the unknown person in the room was actually Mr. Morales-Pena because the surveillance agents had only seen one other Hispanic person coming and going from the house where the phone call was placed? Well, I think if you recall, there were certainly a number of surveillances, and there were a number of people who were at the two residences. We're talking about two residences. Mr. Martinez moved in between the 21st and the 12th. But there were a lot of people who were at that house, and there were a lot of males who were at that house. And whether or not they were Hispanic-speaking males or not is unknown. Whether or not they were English-speaking males or not is unknown. There are just too many holes here for that reasonable jury to make that jump. Now, I know what the jury did, but I think they did it, at least in my view, because Agent Stavlow made the statement that he made. And as we know from Valencia, the pre-arrest silence carries with it a strong negative influence. And because of that strong negative influence, that's why the jury found these two gentlemen guilty. Now, I'm already beyond the time that I had wanted to go. But frankly, Your Honors, we believe that there is insufficient evidence here and that in any event the Doyle violation deserves reversal. Mr. Holden. Okay. Let's hear from Mr. Holden. And we do want to make, you know, 10 minutes is not very long. We'll make sure that you get to say what you need to say. May it please the Court, Counsel, my name is Jason Holden, as Mr. Gallagher previously introduced me. The problem with the nodding of the head, Your Honors, is that it's counterintuitive to make such an inference in this case because the government tied the nodding of the head, which was a question in English, to which the driver of the vehicle also nodded. And I believe that when you take that inference and you counter or you juxtapose it with the telephone call of a man speaking in English where there's no mention of Morales painting his name, such an inference is unreasonable on this record. Remember that the Court has to consider the evidence in light most favorable to the verdict. However, the Court has to look at the quantitative acts to prove the conspiracy. On this record, Your Honors, Mr. Morales Pena was convicted without ever saying a word, without ever actually being physically present during any of the drug transactions. There's been much discussion in the briefs and in the record about the giving of the drugs by Mr. Martinez. What's critically important on this record, and I think is consistent with this Court's previous rulings as to mere presence, I don't want to go into all those rulings, Mr. Martinez exited the vehicle and went into another vehicle where the drug transaction occurred. Where was Mr. Morales Pena? He stayed in the passenger side of the vehicle where the drug transaction did not occur. Was that the Ford F-150 that had been modified to carry drugs? No, Your Honor, I'm talking of the June 21st transactions. That was a black car. I can't remember the name of the car, but there was a black car in that time. Did he also arrive at the, I guess it would be the third transaction? He did. And that was in the truck that had been modified to hide drugs? Yes, Your Honor. And I think what's very significant about that, proof beyond a reasonable doubt can be proved by lack of evidence. And when Mr. Martinez was arrested, he had a gun. He had a tool. He had a knife to get that secret compartment open. My client, Mr. Morales Pena, first of all, was not in a position of authority in the vehicle, didn't own the vehicle, didn't drive the vehicle. Instead, Jose Flores drove the vehicle. She was in a power position in the driver's side. My client was arrested without any money, without any drugs, and without any tools or weapons. The lack of evidence in this case, when you take a look at the qualitative evidence, is significant. And that's why this Court's previous rulings as to mere presence are controlling in this case. I'm trying to remember, do we have any mere presence cases where the defendant is merely present for three separate drug transactions? I'm bothered by the same evidence that Judge Fletcher questioned Mr. Gallagher about. I understand, Your Honor, but I don't have a case. Your client is there. Yes, Your Honor, but I think what's significant, and, for instance, the case of United States v. Ocampo, 937F2nd, which was cited in Herrera-Gonzalez, where this Court succinctly really analyzed all of the mere presence cases. That case, the individual who was not a part of the conspiracy had keys to the condo, a fingerprint on the truck, and actually knew about the drugs. Here, this Court's previous rulings essentially say that, look, hanging out with someone who deals drugs is not the wisest thing to do, but it's not a crime in and of itself. And that's why I think it's significant in this case, the qualitative acts that Mr. Morales-Pena took. He didn't get in the vehicle when Mr. Martinez left the vehicle and went into the informant's vehicle. And what's important about the drug... They were on the first drug transaction. Yes, the first two drug transactions on June 21st. He stayed in the vehicle. He never was physically present in the informant's vehicle when the drug transaction occurred. And then what's significant about the facts for Mr. Morales-Pena is that on July 12th in the pickup, that transaction was never completed. Remember, there's a great amount of discussion as to needing a garage, needing a garage. Okay, that was because they arrested everybody, right? That's correct. And then they took the hidden panel off, and lo and behold, there are the drugs. That's correct. But what I think is significant, Your Honor, is that the inference has to be reasonable. And the inference here, based on the previous two drug transactions on June 21st, is that Mr. Morales-Pena... Why, let me ask this. If he's present three times when drug deals are being made, and if Martinez is heard talking to some Hispanic-speaking person, and if also Morales-Pena nods affirmatively when he's asked, do you have the drugs, like why aren't those things together sufficient, even though each can be questioned? But why aren't they sufficient to sustain the government's sufficiency of the evidence if we view the evidence in the light most favorable to the government? Because they're counterintuitive, Your Honor, in this sense. The government cannot use the phone call with a gentleman speaking Spanish and claim that it's Morales-Pena. At the same time, it uses the head nod in response to a question in English. Mr. Morales-Pena does not speak English, Your Honor. But that doesn't mean he couldn't understand a simple question in English. Basically, do you have the drugs? What's significant about that was the question related to, are you ready to get this deal done? Now, if Mr. Morales-Pena was the only person who nodded in response to that question, I think, Judge Gold, you would be accurate in the sense that you can use that. But you had Jose Flores, or Josie Flores, who was Mr. Martinez's girlfriend, nodding. And so you have a person in the backseat essentially being compliant with the driver of the vehicle. So your theory is that's a sympathetic nod? Everybody else is nodding, so Mr. Morales-Pena is going to do the same? What I'm saying is that that inference is not reasonable, Your Honor, that you cannot have on this record, when you take a look at the qualitative acts of Mr. Morales-Pena staying in the car before and not being part of the drug transaction, and then jumping, leaping, saying he is the person unidentified on the phone call speaking Spanish, and he obviously was nodding in response to the agent's question, when you have an unindicted driver of the vehicle. Why wouldn't it be consistent with the government's theory of the evidence that Morales-Pena, let's say he was the source of supply to Martinez, and he wanted to sort of remain as aloof as possible. And so he's the partner with whom Martinez confers during the phone call. When they show up for the first drug transaction, he wants to shield himself from exposure, so he has Martinez get out of the car to go finish the transaction. Why wouldn't all that be consistent with the government's theory that he is the person with whom Martinez was conspiring? Well, Your Honor, the evidence just doesn't support that, and I'll tell you why. When they searched the home, Your Honor, there was no evidence found linking Mr. Morales-Pena to anything in this case. No admissible evidence, right? Well, I'm taking a leap there, Judge. Because we can't consider what was stricken. But you can't consider what was stricken, but I think I'm bound not to misrepresent what was stricken. And what was stricken included no evidence linking Mr. Morales-Pena to the residence. Were all these arguments about the inferences being unreasonable? Were they presented to the jury? And if so, what's the significance of that for us? I understand, Your Honor. I think the significance of that is that this is de novo review, Your Honor. And these inference-type arguments were, one, argued to the judge, I believe, in the Rule 29 motion. And they are, in a sense, jury arguments, Your Honor. But the review here is de novo, where you have to take a look at the qualitative acts. So I think the court can consider these arguments on appeal. Okay. Why don't we hear from the government, and then we'll give both of you a chance to respond. I appreciate the additional time. For sure. Good morning, Your Honors. May it please the Court, my name is Tim Roscoe, and I'm an assistant U.S. attorney in our Missoula branch office in the District of Montana. And I was trial counsel in this case at the district court level. Judge Gould, I thought that you made a very interesting observation when you were talking to Mr. Holden about the fact that you need to look at all of the evidence in a light most favorable to the United States and not just parse it out one piece at a time. If it was just that Mr. Morales-Pena was present at all three drug deals, that might not be enough. If it was just that he nodded his head, that might not be enough. If it was just that we had a recorded phone conversation with a Spanish-speaking individual, that might not be enough. When you take all of it together, when you allow that the jury could draw inferences from all of the different evidence and you view that in a light most favorable to the United States, I do think there's sufficient evidence to sustain the convictions of both of the defendants in this case. Judge Tallman, you also made a very interesting point, and I had made a note to bring up the fact that there had been so much made about this issue about English-speaking or Spanish-speaking. But the conversation that the jury heard, and as I reviewed the record last night, I realized that really doesn't come through very well in the record because, of course, what they actually hear being played on the CD in open court isn't in the record. It just says, Government's Exhibit 8 being played. They don't just hear Ruben Martinez talking to someone in the background and not hear the response. They, in essence, hear almost the entire conversation, and it takes place in a combination of English and Spanish. And the reason that we know that it was mostly Spanish is because when Agent Grimaud is kind of trying to negotiate the price, he's asking questions about a full pound or half a pound, and Ruben Martinez on the other end is asking those same questions to the individual, to whom he's referred to as his partner, and then coming back with an answer. And at one point, they talk about Ocho. What about Ocho being eight ounces or half a pound? And, in essence, the price stays the same, so they don't end up making a change. But the jury heard the entire conversation, side conversation, between Mr. Martinez and Mr. Morales-Pena, not just Ruben Martinez asking questions and then coming back on the phone. Was that side conversation, if you want to call it that, background conversation, was it entirely in Spanish or was it a mixture of Spanish and English? It was a mixture of Spanish and English. It was predominantly Spanish, is my recollection, but it was a mixture of both, because then there were some questions of Agent Grimaud, well, how do you know what they were talking about? You don't speak Spanish. And he says, well, I know Ocho is eight. And I just asked Ruben Martinez how much for half a pound, and he came back and said this is how much it would be for Ocho or eight. But it was, I think, predominantly Spanish. But I think the notion that Jose Morales-Pena either understands English or only speaks Spanish, I just don't think that's accurate. I think he could speak in Spanish predominantly on Government's Exhibit 8, the phone call, and still nod his head affirmatively to a question, did you guys bring the stuff? Let's get this deal going. And I also think it's very important that Agent Heaney testified that in the surveillance that he performed on Ruben Martinez's residence, Ruben Martinez and Jose Morales-Pena were the only two Hispanic males seen between the deals on June 21st and the deal on July 12th. And the phone call, Government's Exhibit 8, was June 28th. The jury can draw an inference that the person to whom Ruben Martinez is speaking is the person that he refers to as his partner, and it's the only other person, Hispanic male, who's been seen at that residence, and that's Jose Morales-Pena. Can I ask you about the response that Homeland Security Agent Stavlow gave to the question? And he says, because Mr. Martinez refused to speak to me after I explained to him, and as Miranda writes, I have no way of inquiring as to his family or his background. I assume Agent Stavlow is relatively well-trained, and any well-trained officer has to know that that is an impermissible answer. Did it surprise you when he answered that? You were the one questioning him. Well, actually, it was in response. So you're the one. I was there. And he was your witness. He was being cross-examined. He was my witness. That's correct. It did surprise me, Your Honor, although I must confess that perhaps it's because I haven't been on the job long enough. It didn't strike me that it was that big of a deal until 15 or 20 minutes later when we were arguing about whether or not there was going to be a mistrial. So I was a little bit taken aback. Agent Stavlow is very experienced. I know him personally, and I talked to him after the hearing. Honestly, Judge, he didn't realize that it wasn't appropriate. He views that as basically his way of saying, hey, I was trying to protect his rights. I know what my obligation is as an agent to say, you know, these are your rights under Miranda, and he didn't want to talk to me anymore, so I didn't. Nonetheless, not an answer that should have been given. It could have just been a simple yes or no, although Mr. Gallagher is very experienced, a very good defense lawyer, a very savvy cross-examinator. If he had wanted a yes or no answer, I'm certain he could have also said, just please give me a yes or no answer and then asked the question. But more importantly, Judge Fletcher, if I could, is I looked back at the record, and we actually put a greater portion of that cross-examination in our brief. And the questioning starts from Mr. Gallagher saying to Agent Stavlow, and did you have an opportunity at any time to question Mr. Martinez, Ruben Martinez? And Agent Stavlow says, yes, I did. And Mr. Gallagher says, he speaks English, does he not? And Agent Stavlow says, he does. And then it continues with another two or three questions and answers before you get to that point. The clear thrust of the questioning was, you had a chance to talk to this guy, but you can't tell me where he was born, you can't confirm for me that he was born in California and that he's a United States citizen. And Agent Stavlow got defensive about his investigation, which he shouldn't have, but he did and said basically, hey, all I know is. I'm not so much concerned with, I'll just telegraph my punches on this one. It seems to me that whatever error there was was cured. I'm not concerned about that. But what I am concerned about is that this just seems to me a fairly clearly improper answer coming from an experienced agent. I wouldn't disagree with that. I wouldn't disagree with that. I think he got defensive, and I think in the heat of the moment. And I assume you've had words with him since. We had words that afternoon, and we had them again as I was briefing. Did Meloy cross swords before? Apparently they have, Your Honor, and frankly it was before my time in the office, but there's clearly. There was some history there between the judge and the agent that may have resulted in the striking of the entire testimony and all the attendant exhibits. I believe it may have been partially due to the history, but I think also Judge Meloy was making an attempt to protect the record as best he could and frankly I had already asserted, Judge, even if you strike at all, I think I can prove the case, and I think he thought perhaps the best thing to do here is cut a wide swath and we'll take it out all together. Okay. I made the point I want, which is much more directed to sort of how this agent behaves himself. No, that's very well taken, Your Honor, and I'll pass it along again. If there are no further questions, I'll cede the remainder of my time. Thank you very much. Thank you. Response, and given that we've got two defendants and two lawyers, we'll allow both of you to respond. Mr. Gallagher, you go first. Thank you very much, Your Honor. I wanted to speak to Judge Gould's question of Mr. Roscoe. The inference arguments were indeed made to the jury. The inference arguments and the weaknesses of those inferences were also made to Judge Molloy during the Rule 29 motion. If the Court will recall his review of the record, Judge Molloy held that in abeyance overnight under consideration until the next morning. Did he defer until after the jury returned its verdict, or did he rule before he instructed? He ruled before he instructed. Yet there was a conviction. Now, there's two things about that. And neither one of them I can deny. We're talking about a pound of meth. My client was in the truck with a pound of meth. There were two drug transactions which I admitted on the June 24th transactions. They happened. But who did he conspire with? Those are the inference that were drawn from the facts, and the government never showed, although there was presence by Morales-Pena, they never showed a concert of action. Yes, Mr. Holt? I was intrigued by your theory here. It's a bold defense. You basically concede that he distributed, so therefore he's guilty of the substantive counts. There were no substantive counts. Oh, I'm sorry. And you're not required to show an overreact in furtherance of the conspiracy. Exactly. But having said all that, why wouldn't the jury be able to conclude simply on the basis of the telephone conversation, coupled with the distribution by your client that he obviously conspired with his partner, whoever that may be? That's my point, whoever it might be. Certainly the government can prove a conspiracy where there are unnamed or unknown individuals, but they still have to show that there's been an agreement. But why doesn't the phone conversation answer the question? Because it doesn't identify either who that was or what the conversations were about. We know one word, Ocho, that's it. But we heard Mr. Martinez say, I have to talk to my partner, and then there is a discussion in Spanish and English in the background over, are we going to give them a price break on a half a pound or a pound, and then they come back with a price quote. What more does the government need to show? Your Honor, I don't think that that conversation was as immediate and together as the government would have you believe when you review the transcript. I have to talk to my partner was well before any conversations in the background. And we don't know what those conversations were. But the undercover agent is negotiating the deal, and the question is how much for what quantity, and that's what that phone conversation is all about. And you couple that with I have to talk to my partner. We still don't know who the partner is. All government has to show in an 846 drug conspiracy is that there was an agreement. There was an agreement to distribute drugs, but we don't know what that conversation was. I think we have to know what that conversation is to show an agreement. But does the jury conclude from the circumstantial evidence without regard to translating Spanish to English that they had just heard evidence of an agreement to distribute half a pound of methamphetamine? Because unless the entire jury spoke Spanish, we don't know what they thought. But they know that the undercover agent who spoke English testified that I called Martinez to negotiate the deal, and at the end of the phone conversation, we had a deal for eight ounces of methamphetamine for however many dollars he was going to pay. I don't think it was an eight-ounce deal at that point. There was a pound deal later, be that as it may. I mean, I hear your argument. I think it's – I'm impressed with the boldness of the defense. I just – Well, when you have two drug deals, there's not too much you can do. Yeah, no, I understand. Let me ask you this. You know, it's fairly common and sometimes notorious in political cases to have, quote, unindicted co-conspirators. I guess I'm showing my age. I assume that your client could be guilty of a conspiracy based on this evidence even if Mr. Morales-Pena is not the co-conspirator. Is that correct? Legally, that's correct. I don't think that there's a factual basis in this record to indicate that there was an agreement with someone who, even if we don't know who it is, that there was an agreement with any person. And I just wanted to complete my – and this also addresses your rather bold statement during Mr. Orozco's argument that it doesn't bother you, the result, Judge Malloy. I don't think I said it doesn't bother me. I think I said that it's sufficiently cured. And I most respectfully disagree with that. I think that the mistrial should have been granted because my second point to Judge Gould's response about the inferences is, let's put this in the context of when it happened. There was, at least in my view, the weakness of the government's evidence. It was all based on circumstance and inference. And then there is this highly volatile and extremely negative statement by a very, very experienced agent. Mr. Gallagher, back to the question I asked you on your opening argument. Assume that you haven't convinced us on the sufficiency of the evidence with regard to the conspiracy charge. If we reverse and we remand, you're going to get a new trial and the agent's going to get back on the stand, and this time he's not going to make that same mistake twice. I understand, Your Honor, and I'll give the Court the same answer I gave Judge Malloy when he said, you may get what you want. And I said, I understand that. Okay. Okay, all right. Thank you. Mr. Holden? Your Honor. Thank you. I just want to be very brief. Judge Fletcher, you, I believe, have nailed my position exactly on point. Mr. Morales-Pena stands independently of Mr. Martinez, and I believe that this Court can find that there may be sufficient evidence to convict Mr. Martinez as to, quote-unquote, others without having sufficient evidence to convict Mr. Morales-Pena. On this record, I would ask this Court to do that given the arguments. I do believe that in response to Judge Gold and Mr. Roscoe's arguments, it is counterintuitive in this case. When you look at the qualitative acts of Mr. Morales-Pena, to consider all of those acts in connection with each other, because two of the acts on June 21st are consistent with this Court's previous rulings that mere presence is not enough, and the telephone call itself is not enough either. There is no evidence in the record, none, that that is Morales-Pena. And if Mr. Martinez wanted the agent, or who he thought was not an agent, to know who his partner was, he could have said Morales-Pena. And I was going to say, Judge Tallman, in response to your previous question, when I was up here as to let's assume that the jury could have inferred that Morales-Pena wanted to stay in the background, when you're dealing with a pound of meth and nearly $24,000, you're not going to do that if you're a drug dealer. You would at least have a weapon. You would at least have money on you. You would at least have a tool to know where those drugs are located. And the evidence in this record is not that. The evidence is the exact opposite, that Morales-Pena had nothing on him. Indeed, it was Mr. Martinez. The one question I had for you was you had joined Mr. Gallagher's argument with regard to the mistrial issue, and I frankly don't understand how the agent's response hurt Mr. Morales-Pena. Your Honor, I did that for a number of reasons. First, Mr. Bailey, trial counsel, joined that argument, and the government has argued that, for my position, the court should look at that for plain error. I am sufficiently confident that the sufficiency of the evidence argument is really our strongest argument on appeal, Your Honor. And the reason I joined is that you never know what a jury is going to think in terms of what Stavlos said and how it may impact Morales-Pena, who we're truly arguing is an innocent party. Okay. Okay. Thank you. Thank you very much. Thank all of you for your helpful arguments in this case. The case of United States v. Morales-Pena and United States v. Martinez is now submitted for decision. The next two cases on the calendar have been submitted on the briefs, and that's United States v. Stump and United States v. Richardson. We've got one last argued case this morning, and thank you for your patience. That case is United States v. Enslinger.
judges: Fletcher, Gould, Tallman